DECISION
This matter is before the Court on the application of David Roscoe ("Roscoe" or "Petitioner") for Post-Conviction Relief. Jurisdiction is pursuant to G.L. 1956 § 10-9.1-1.
 I FACTS AND TRAVEL
On September 28, 1990, a jury convicted David Roscoe of first degree child molestation, second degree child molestation, simple assault and battery, and intimidation of a witness or victim. Subsequently, on January 16, 1991, the trial justice sentenced Roscoe to incarceration for a period of thirty years, with fifteen years to serve and fifteen years suspended. Roscoe appealed this conviction to the Rhode Island Supreme Court, which denied the appeal, effectively affirming the conviction on February 24, 1992.See State v. Roscoe, 603 A.2d 330, 330 (R.I. 1992). Roscoe served eleven of the fifteen years and was released on March 1, 2001.
In February 2003, Roscoe was charged in District Court with simple assault and held without bail as a violator. On May 12, 2004, Roscoe was convicted of simple assault before Judge McLoughlin (who had served as the prosecutor in the child molestation case) and sentenced to incarceration for a period of one year, with three months to serve. Thereafter, this Court found Roscoe to be a violator and consequently ordered him to serve the entire suspended sentence originally imposed as a consequence of his initial conviction.
On June 8, 2005, Roscoe initiated this action for post-conviction relief. Roscoe alleged *Page 2 
three grounds for relief in his initial pro se application for post-conviction relief pursuant to § 10-9.1-1: (1) judicial prejudice and bias, (2) ineffective assistance of counsel, and (3) lack of evidence. Thereafter, in August 2005, the court appointed counsel for Roscoe to pursue this action. In March 2007, this Court appointed new counsel for Roscoe because original counsel had missed several court appearances. On December 14, 2007, after twice meeting Roscoe and conducting a review of the application and court transcript, appointed counsel filed a "no-merit" memorandum in accordance with the requirements of State v. Shatney.See 755 A.2d 130, 135 (R.I. 2000).[1]
After a subsequent hearing, this Court granted the motion to withdraw and advised Roscoe that he could move forward prose. Subsequently, Roscoe filed an amended application on April 16, 2008, alleging further judicial prejudice and bias against both himself and his defense attorney. See Pet. Amend. Mem., 1-2. Roscoe also suggested in another communication with the court that the judge who presided over his simple assault trial in 2004 was the prosecutor in the original child molestation trial (Judge McLoughlin). On September 19, 2008, this Court conducted a post-conviction relief hearing, at which Petitioner appeared pro se.
As presented by Roscoe in his court filings and appearances, the issues now before this Court are:
 (1) Whether judicial misconduct towards both petitioner and defense counsel ultimately prejudiced jury's factual determinations of the child molestation case;
 (2) Whether Roscoe was prejudiced because the trial judge in the 2004 simple assault proceedings was the state prosecutor in the 1991 child molestation proceedings; *Page 3 
 (3) Whether defense counsel's "mixing up facts" resulted in ineffective assistance of counsel; and
 (4) Whether there was no physical or medical evidence presented as to the sexual assault.
After due consideration of each issue, for the reasons set forth herein, this Court finds that Roscoe's claim is legally and factually without merit. Therefore, the Court denies Petitioner's application for post-conviction relief.
 II STANDARD OF REVIEW
Pursuant to § 10-9.1-1, post-conviction relief is available to "any person who has been convicted of a crime and who thereafter alleges either that the conviction violated the applicant's constitutional rights or that the existence of newly discovered material facts requires that, in the interest of justice, the conviction be vacated." See Thorton v. State,948 A.2d 312, 315-16 (R.I. 2008). On an application for post-conviction relief, the petitioner bears the burden of proving his allegations by a preponderance of the evidence. See,e.g., Larngar v. Wall, 918 A.2d 850, 855 (R.I. 2007). In ruling on an application for post-conviction relief, § 10-9.1-7 provides that "[t]he court shall make specific findings of fact, and state expressly its conclusions of law, relating to each issue presented." Pursuant to § 10-9.1-7, an order granting or denying post-conviction relief "is a final judgment."
 III ANALYSIS
a. Judicial Misconduct
Roscoe alleges that the trial justice committed several instances of misconduct — including the improper exclusion of evidence and certain actions which prejudiced the jury — during the child molestation proceedings in 1991. Roscoe also alleges that he received *Page 4 
ineffective assistance from defense counsel in those proceedings, because counsel "mixed things up" and did not have an adequate backup plan after certain evidence was excluded. Finally, Roscoe alleges that the trial justice who presided over the 2003 simple assault case was biased because he prosecuted Roscoe in the 1991 child molestation case. After considering each claim in turn, this Court finds that Roscoe's claims are without merit, and do not entitle him to relief.
b. Judicial Comments
Petitioner alleges that his child molestation trial was tainted by judicial bias because the trial justice muttered in Italian to the prosecutor that defendants found guilty of child molestation receive heavy sentences. If a defendant alleges judicial bias, he "`carries a substantial burden of proof to show that the asserted prejudice impaired the fairness of the trial.'" State v. Lyons,924 A.2d 756, 763 (R.I. 2007) (quoting In re Shawn B.,864 A.2d 621, 624 (R.I. 2005)). Further, because judicial comments should be viewed in context, mere criticism viewed in isolation is insufficient to establish judicial bias. See id. (citingNotarianni v. Carter, 797 A.2d 1075, 1075 (R.I. 2002)).
During his initial arraignment, Petitioner alleges that the trial justice muttered in Italian to the prosecutor that the defendant would be convicted and that defendants who are guilty of these types of crimes receive the maximum sentence. Petitioner concedes that he did not overhear this statement, but instead asserts that it was overheard and communicated to him by a friend who was sitting in the public gallery. Assuming arguendo that the trial justice actually made such a statement, it is important to note that the alleged statement occurred during the arraignment, for which the jury is absent. Therefore, only the attorneys and those in attendance could possibly have overheard — even if the jurors had understood Italian, they simply would not have been present to hear the statement. It was the jury, however, which convicted Roscoe. Because the *Page 5 
fact-finder of Roscoe's child molestation trial — the jury — was not present for the judge's alleged statement, this statement could not possibly have affected or "impaired the fairness of the trial."See Lyons, 924 A.2d at 763. Accordingly, Roscoe is not entitled to post-conviction relief based on the alleged statement.
During the cross-examination of the child victim, the trial justice reiterated the victim's testimony by stating that "she said it hurt." Petitioner alleges that this reiteration improperly conveyed to the jury the impression that the victim was sympathetic in the judge's eyes. Although the statement might appear inappropriate viewed in isolation, the Lyons case indicates that judicial comments must be viewed in context. See924 A.2d at 763.
Here, the trial justice reiterated the victim's answer to defense counsel's question of how the victim knew that she had been penetrated only after the young girl had already replied several times that "she could feel the Defendant and it hurt." When defense counsel asked the question again, the trial justice responded for the victim, who had already answered the question exactly as the trial justice said: "she said it hurt." Viewed in context, the trial justice's comment demonstrates at worst an understandable concern for a young witness being forced to talk about an uncomfortable situation through repeated and unaltered questioning. Such concern for a child witness subjected to repeated and unaltered questioning about a sexual assault does not in any way indicate bias against Roscoe, nor is there any evidence that concern for the witness influenced the jury against Roscoe. Accordingly, Roscoe is not entitled to post-conviction relief based on the trial justice's statement that the witness "said it hurt."
c. Cross-Examination
Petitioner alleges in his application for relief that the trial justice unfairly limited the scope of defense counsel's cross-examination of the victim by excluding evidence of an abuse *Page 6 
allegation against the victim's mother. Although "[e]ffective cross-examination is an essential element of the presentation of a full and fair defense and is guaranteed by both the State and the Federal Constitutions," the scope of this right is not unlimited.State v. Doctor, 690 A.2d 321, 327 (R.I. 1997) (quotingState v. Veluzat, 578 A.2d 93, 94 (R.I. 1990)). "[A] trial justice [is afforded] wide discretion to permit or limit defendant's cross-examination of a trial witness and, absent a showing of clear abuse of discretion," the ruling should not be disturbed.Lyons, 924 A.2d at 762. Indeed, a trial justice only abuses his discretion by failing to afford a defendant "a minimum threshold of inquiry as to the witness's probable motive for his testimony."State v. Oliveira, 730 A.2d 20, 24 (R.I. 1999) (holding that where defense counsel was prohibited to question into bias of witness and where witness credibility was the central issue to be submitted to the jury, defendant was unfairly prejudiced by judicial misconduct).
Petitioner is misplaced in his assertion that the trial justice unfairly limited the scope of defense counsel's cross-examination of the victim. On these very facts, our Supreme Court has held to the contrary that the trial justice properly restricted the victim's cross-examination. See Roscoe, 603 A.2d at 330. The Supreme Court specifically stated that the trial justice "correctly restricted the scope" to "preclud[e] defendant from inquiring into an investigation conducted by the Department for Children and their Families." Id. The restriction was appropriate in light of the fact that the "investigation involved an allegation of excessive discipline by the victim's mother against the victim's sister."Id. This investigation, which did not involve either the victim or Roscoe, was wholly irrelevant to the question of the victim's reliability as a witness. Indeed, rather than inquiring into the witness's probable motive for her testimony, the defense sought to present evidence which was so far afield that it would have demanded the fact-finder to make inferences upon inferences in order to have any impeachment value whatsoever. *Page 7 
Moreover, the introduction of facts relating to the victim's mother and sister would have presented a serious risk of distracting the jury from the central question of whether Roscoe sexually assaulted the victim. In sum, not only has the Supreme Court already ruled on this precise issue, but it is also clear to this Court that the trial justice's limitation on the scope of cross-examination did not deprive Roscoe of "a minimum threshold of inquiry into the witness's probable motive for [her] testimony," but was instead a prudent evidentiary ruling. See Oliveira, 730 A.2d at 24.
Petitioner also alleges that the trial justice improperly interrupted the defense counsel during the cross-examination of prosecution's witness, and that this interruption served to "shake the confidence of the defense attorney so that he could not give his best effort for the defendant's cause." (Pet. Amend. Mem. 2.) For example, petitioner points to an exchange after the trial justice ruled that the defense could not question the victim based on the records of the aforementioned investigation into allegations of abuse by the victim's mother against the victim's sister:
 Q (Defense): Were you also concerned about your mother's
 problems as far as the State was concerned?
 Prosecution: Objection, Your Honor.
 The Court: Take the jury out, please. (Jury taken from courtroom).
 [. . .]
 The Court: I told you the subject matter, whatever problem [the victim's mother] may have had with the other children, was off limits in this case, didn't I? That was the result of my ruling, wasn't it?
 Defense: It was, Judge.
 The Court: Why are you continuing in that vein?
 Defense: Because I'm trying to impeach her with a possible other motive.
 The Court: You can impeach what she said here, you hear me?
 Defense: You're not letting me do that.
 The Court: I'm not letting you get in the back door. I wouldn't let you get in the front door.
 (Tr. at 57-58.) *Page 8 
Petitioner alleges that exchanges such as the above excerpt demonstrate judicial bias against his attorney and himself and that this type of court "interference" had a prejudicial effect on the jury. However, the Petitioner fails to indicate that most of the Court's questioning of the defense occurred outside the presence of the jury. Such questioning could have little, if any, prejudicial effect on the jury's fact-finding. Moreover, interruptions do not in and of themselves rise to the level of judicial misconduct, but instead reflect the reasonable discretion a trial justice possesses over the limitations of cross-examinations. Both the Supreme Court and now this Court have already ruled that the trial justice's limitation on the scope of cross-examination was appropriate; nevertheless, defense counsel repeatedly ignored this limitation. In light of defense counsel's attempts to introduce excluded evidence, the trial justice's interruptions are certainly not improper. Therefore, because the challenged interruptions occurred primarily outside the presence of the jury and because the challenged interruptions were appropriate in light of defense counsel's conduct, these interruptions do not entitle Roscoe to post-conviction relief.
d. Judicial Discretion
Roscoe further alleges judicial misconduct by positing that the trial justice who presided over the initial matter "prejudiced the case by not paying attention to defense attorney's argument as to why defense wants key witness to testify," not permitting that witness to testify, prohibiting defense from making an opening statement, and "sid[ing] with prosecution," thereby leading "the jury to believe that the defendant is guilty before trial." (Pet. Amend. Mem. 2.) These claims are wholly without factual or legal merit.
Turning first to the exclusion of Roscoe's "key witness," the "key witness" Roscoe refers to is the keeper of records for the Department of Children and their Families ("DCF"). Defense counsel sought to question this witness on the issue of allegations that the victim's mother *Page 9 
subjected the victim's sister to physical discipline which rose to the level of abuse. This Court has already discussed the propriety of the trial justice's limitations on the scope of cross-examination regarding this very issue. For the same reasons discussed above — in particular, the irrelevance of the testimony and its potential for confusing the jury — the trial justice's decision to exclude Roscoe's "key witness" was appropriate. Indeed, this Court agrees that the testimony of Roscoe's "key witness" was "not sought in order to advance a theory or defense, but rather to engage in obfuscation, confusing the fact finder in this case, the jury." (Tr. at 28.) Because the witness's testimony would have been irrelevant, the trial justice's exclusion of this testimony does not entitle Roscoe to post-conviction relief.
Next, the Court will look to the trial justice's limitations on Roscoe's opening statement. "The proper function of an opening statement is to apprise the jury with reasonable succinctness what the issues are in the case that is about to be heard and what evidence the prosecution and the defense expect to produce at trial in support of their respective positions." State v. Byrnes,433 A.2d 658, 664 (R.I. 1981) (citing United States v.Breedlove, 576 F.2d 57, 60 (5th Cir. 1978)). The opening statement, however, is "not an appropriate vehicle in which to attempt to impeach or otherwise argue the merits of evidence that the opposing side has or will present." Id. Here, the defense attempted to present evidence regarding the DCF records during the opening statement, just moments after the trial justice ruled that the records and the testimony of the DCF witness were inadmissible. For the reasons discussed above ad nauseam, the trial justice's exclusion of this evidence was entirely appropriate, and does not entitle Roscoe to post-conviction relief.
e. Conflict of Interest
Roscoe has suggested in a communication with this Court that he is entitled to post-conviction *Page 10 
relief on the ground that Judge McLoughlin served as both the prosecutor in Roscoe's 1991 child molestation case and the trial justice in his 2004 simple assault case. Generally, courts will find a conflict of interest where a judge presides over a proceeding involving a defendant whom that judge has previously prosecutedonly in the case of a "further proceeding involving thesame defendant in the same offense." 46 Am. Jur. 2d Judges § 166 at 278 (emphasis added). Further, where the judge has "personally prosecuted" the accused, he is disqualified only from "sitting as judge in a matter involving thatconviction." Id. (emphasis added).
Here, Judge McLoughlin committed no impropriety, because he presided over Roscoe's trial on an offense — simple assault — which bears no relation to the child molestation case that Judge McLoughlin had prosecuted thirteen years prior. Although both cases involved the same defendant, Judge McLoughlin would only have had reason to recuse himself if the simple assault case had somehow involved Roscoe's earlier child molestation conviction.See 46 Am. Jur. 2d Judges § 166 at 278. The cases, however, were separate and distinct from one another. It is true that as a result of his assault conviction, Roscoe was found to have violated the terms of his release on the child molestation conviction; however, the finding of violation was issued by a justice of the superior court, not Judge McLoughlin. Moreover, Roscoe has not presented any evidence (let alone enough evidence to meet his burden of proof) that Judge McLoughlin was actually biased by his earlier experience prosecuting Roscoe. Because there is no legal or factual merit to Roscoe's allegation that his assault conviction was tainted by a conflict of interest or judicial bias, Roscoe is not entitled to post-conviction relief on the basis of Judge McLoughlin's two roles, thirteen years apart, as prosecutor and judge.
f. Ineffective Assistance of Counsel *Page 11 
Roscoe argues that he was denied the effective assistance of counsel because of a variety of what he considers to be failures of his attorney. This Court follows the standard set forth by the United States Supreme Court in Strickland v. Washington,466 U.S. 668 (1984), "to determine when a defendant should be granted relief from a conviction because of ineffective assistance of counsel." Brown v. State, 694 A.2d 512, 527 (R.I. 2009). InStrickland, the Supreme Court established a two-pronged test: (1) "the defendant must show that counsel's performance was deficient [such that] counsel was not functioning as the `counsel' guaranteed by the Sixth Amendment," and (2) "the defendant must show that the deficient performance prejudiced the defense."466 U.S. at 687.
With regard to the first prong under Strickland, the Court presumes that an attorney has provided competent assistance unless a petitioner demonstrates that the attorney's performance was less than reasonably effective under the totality of circumstances.See id. at 689 (suggesting that courts should give broad deference to attorney decisions if they may be considered "sound trial strategy"). In other words, a convicted defendant alleging ineffective assistance of counsel must show that the attorney's representation fell below an objective standard of reasonableness in order to prevail. Id.
Rhode Island courts have had multiple occasions to refine the first Strickland prong. Two such occasions are relevant here. First, in the case of State v. D'Alo, the Rhode Island Supreme Court held that the defendant's burden to prove an ineffective assistance of counsel claim was heightened where the attorney's conduct could be attributed to "trial strategy."477 A.2d 89, 92 (R.I. 1984). More specifically, the Court held that because the defendant failed to prove that "decisions made and actions taken by his trial counsel as matters of trial strategy resulted from either neglect or ignorance . . . the decisions and actions did not constitute *Page 12 
ineffective assistance of counsel." Id. Second, in the case ofEvans v. Wall, the Rhode Island Supreme Court held that "infrequent contacts" between defendant and counsel did not amount to ineffective assistance of counsel. 910 A.2d 801, 805 (R.I. 2006). Therefore, in Rhode Island, neither infrequent contacts between defendant and counsel nor decisions of counsel which are attributable to trial strategy rather than neglect or ignorance will support a finding that counsel's representation was unreasonable or ineffective.
Here, Roscoe alleges that when the trial justice refused to allow his "key witness," defense counsel was left with "no other avenue of defense. So he is not prepared for trial." (Pet. Amend. Mem. 2.) He further claims that the defense attorney did not meet with him enough to determine another "avenue of defense." Id. at 39. In his previous application, he additionally alleged numerous omissions on the part of his defense counsel. (Pet. Mem. 4.)
Contrary to Roscoe's assertion that counsel had prepared "no other avenue of defense," defense counsel actually "vigorously attempted to raise the only defense possible, which was that the alleged victim was lying about the sexual assault." (Def. Counsel Mot. to Withdraw, 21.) Counsel sought to demonstrate that the victim was lying through cross-examination and impeachment of the victim's testimony. The DCF witness and report were not necessary to this defense — indeed, as has been discussed above, they were not even strictly relevant to this defense. Moreover, it is worth noting that Roscoe's attorney fought tooth and nail even for this marginal evidence. Counsel's tenacious attempts to bring in evidence that had a slight chance of bolstering Roscoe's defense, in spite of the judge's ruling barring that evidence, are far from consistent with ineffective assistance. Instead, counsel's tenacity is fully consistent with the sort of zealous advocacy to which criminal defendants are entitled.
As to Roscoe's other assertions, first, the "infrequent contacts" between Roscoe and *Page 13 
counsel do not rise to the level of being unreasonable or ineffective. See Evans 910 A.2d at 805. Second, Roscoe has failed to bring forth any evidence tending to demonstrate that the other alleged omissions or mix-ups resulted from counsel's neglect or ignorance. See D'Alo, 477 A.2d at 92. Without factual support for the allegation that these errors resulted from defense counsel's neglect or ignorance, Petitioner has failed to meet his burden to demonstrate that the assistance of counsel was unreasonable or ineffective. See id.
Because Roscoe has not proven that defense counsel's representation was unreasonable or ineffective under the first prong of Strickland, this Court need not consider whether Roscoe was prejudiced under the second prong of Strickland. See466 U.S. at 687. Instead, the Court finds that defense counsel's "errors," "omissions," and "shaken confidences" did not amount to deficient representation. Accordingly, Roscoe is not entitled to post-conviction relief on the ground of ineffective assistance of counsel.
g. Lack of Evidence
Finally, Roscoe alleges that there was insufficient medical or physical evidence adduced at the child molestation trial to indicate that he had committed the sexual assault or that the "alleged victim was even penetrated." (Pet. Mem. 4.[2]) However, a court may find that a child has been abused under the provisions of the child molestation statute "despite a lack of physical evidence of harm or even a means of determining that there has been emotional harm."In re James A., 505 A.2d 1386, 1389-90 (R.I. 1986). Indeed, the Rhode Island Supreme Court has held that penetration does not have to be proved in any particular manner, and may in fact be proved through circumstantial evidence. State v. Golden,430 A.2d 433, 436 (R.I. 1981) ("when one of understanding testifies to a completed act of sexual intercourse, it has been held to be *Page 14 
sufficient proof of penetration"). In other words, a lack of physical evidence alone does not defeat a claim of sexual assault because the fact-finder is free to consider circumstantial evidence.
Petitioner alleges that there was no medical or physical evidence introduced in the child molestation trial to indicate affirmatively that he committed the sexual assault. Although no medical evidence was presented, the victim testified that she knew she had been penetrated "because it hurt." The victim was only twelve years old at the time of the incident in 1988, but by the time of the trial she was fifteen — old enough to understand the meaning of the questions posed to her and old enough to understand the significance of her testimony.[3] This testimony was sufficient to support a finding that Roscoe had molested the victim. SeeGolden, 430 A.2d at 436. Indeed, the jury determined that the victim had presented credible testimony which served as circumstantial evidence of sexual assault. Because the victim's testimony was sufficient evidence to support a guilty verdict, this Court holds that Roscoe is not entitled to post-conviction relief due to insufficient evidence.
 IV CONCLUSION
For the foregoing reasons, this Court holds that the issues raised by Petitioner in his applications for post-conviction relief are factually and legally without merit. Therefore, the application is denied, and the verdicts reached in the prior proceedings remain undisturbed.
[1] "[A]ppointed counsel must file with the court and serve upon the applicant a motion to withdraw accompanied by a `no-merit' memorandum that details the nature and extend of his or her review of the case, lists each issue the applicant wished to raise, and explains why in counsel's professional opinion those issues and any others that he or she may have investigated lacked merit. The court must conduct a hearing with the applicant present. If, based upon its review of counsel's assessment of the potential grounds for seeking post-conviction relief and of any other issues that the applicant wishes to raise, the court agrees that those grounds appear to lack arguable merit, then it shall permit counsel to withdraw and advise the applicant that he or she shall be advised to proceed pro se, if he or she chooses to pursue the application."
[2] Defense counsel presented Dr. Laura Ruth Viehmann's testimony that one month after the incident, there was no evidence to confirm or deny sexual penetration, but that fact was in no way determinative because evidence of penetration normally could heal in a one month period. See Def. Counsel Mot. to Withdraw, 23.
[3] The Rhode Island Supreme Court hinted in Golden that a child could present circumstantial evidence of penetration as long as her testimony was knowing. See 430 A.2d at 436. Although the Court did not address this point fully, it did cite a Minnesota case that had recently determined that a fifteen year old girl who knew the meaning of terms used in her testimony such as "making love" and "sexual intercourse" could provide understanding testimony, and that such testimony was sufficient to establish penetration. See id. (citing State v. Steinbrink,Minn., 297 N.W. 2d 291, 292 (Minn. 1980)).